**In Re COMPACT DISC MINIMUM ADVERTISED PRICE ANTITRUST LITIGATION**

No. MDL NO. 1361.

United States District Court,
D. Maine.

March 29, 2005.

Francis E. Ackerman, Maine Assistant Attorney General, Augusta, ME, Liaison Counsel for the Plaintiff States.

Linda Gargiulo, Assistant Attorney General, New York City, Lizabeth Leeds, Assistant Attorney General, Tallahassee, FL, Lead Counsel for the Plaintiff States.

Alfred C. Frawley, III, Esq., Gregory P. Hansel, Esq., Preti, Flaherty, Beliveau & Haley, LLC, Portland, ME, Liaison Counsel for the Private Plaintiffs.

Joseph C. Kohn, Esq., Michael J. Boni, Esq., Kohn, Swift & Graf, PC, Philadelphia, PA, Lead Counsel for the Private Plaintiffs.

Michael E. Jaffe, Esq., Wolf Haldenstein Adler Freeman & Herz, LLP, New York City, Counsel for the Trowbridge Plaintiffs.

William J. Kayatta, Jr., Esq., Clifford H. Ruprecht, Esq., Pierce Atwood, Portland, ME, Liaison Counsel for the Distributor Defendants.

Joseph H. Groff, III, Esq., Jensen, Baird, Gardner & Henry, Portland, ME, Liaison Counsel for the Retailer Defendants.

## ORDER ON MOTION FOR ATTORNEY FEES AND LITIGATION EXPENSES

HORNBY, District Judge.

We have come to what I hope is the final track in the multidistrict CD litigation. The lawyers for the plaintiff class of music club members now have data concerning the actual realized value of the vouchers they obtained in settling. They have, therefore, renewed their request for attorney fees and expenses.

I summarize the preceding tracks. I rejected a first proposed settlement of the music club case (there were a number of objectors) because I could not find quantifiable value accruing to the plaintiff class. I approved a second and richer settlement proposal (only one objector remained), because I concluded that it did deliver quantifiable value. But I deferred a ruling on attorney fees at that time, because I could not yet reasonably determine what that quantifiable value would be. (Determination of an appropriate fee award starts with assessing a percentage against the amount recovered.) The settlement included a cash escrow of $1,025,000 set aside to cover such items as expenses of notice, a toll-free telephone number for class inquiries, incentive payments to the named plaintiffs, attorney fees and expenses. With interest, that cash escrow amount has grown to $1,037,881. The remainder of the approved settlement was a voucher to each class member that could be used to purchase between one and three CDs for $4.50 each, with free shipping and handling. Comparing the settlement voucher to other available offers, I concluded when I approved the settlement that this voucher was worth $4.28. The class size was 8.1 million music club members in the 1996 to 2002 calendar period. The parties' experts estimated that fifteen to twenty percent of the class would use the vouchers, but I was not persuaded.

Now the data are in. The defendants mailed over 8.1 million vouchers to class members, and there were publication and rebate notices as well. In response, the class redeemed 173,418 vouchers, just over two percent of them.[1] With those vouchers class members purchased 351,742 CDs at the discount price with free shipping and handling. The settlement, therefore, turns out to have been worth approximately $1,505,000 to the class ($4.28 × 351,742). The lawyers suggest that changes in the music industry (such as the proliferation of digital music exchange) may explain the low redemption rate, but I really am not concerned with why the redemption rate is low. It reflects the realized value of the settlement to the class, whatever the reasons for the redemption rate.

---

1. Inexplicably, the request at one point refers to 159,000 total vouchers. Decl. of Michael Jaffe ¶ 21. I assume that is an error, since the 173,418 number is used everywhere else.

In my earlier Orders, I set forth in detail the standards for awarding attorney fees and expenses. I do not repeat them here, except to observe that the percentage of fund method is the prevailing approach for a common fund case like this, subject to check by the lodestar approach. I move directly to their application.

The following are legitimate incurred expenditures to assess against the escrowed cash fund:

| | |
|---|---|
| Publication Notice [2] | $ 57,231.50 |
| Toll-free number for class members seeking information, redeeming vouchers, etc. | 42,596.78 |
| Economist Fees | 96,796.15 |
| Named plaintiff incentive awards (previously approved) | 5,000.00 |
| *Total* | $201,624.43 |

Subtracting those expenditures leaves $836,256.57 of the cash escrow available for distribution. The lawyers seek the remaining sum for their attorney fees and expenses. They claim that they have actually incurred $1,646,845 in fees and expenses at their ordinary billing rates. The original objector, David Plimpton, has renewed his objection to the fee request.

I held a hearing on the request for attorney fees at the final fairness hearing for the music club settlement on November 10, 2003. No one has requested an additional hearing on the renewed request,[3] and I conclude that a second hearing would not be useful. To be sure, now there are additional data, but both the requesting lawyers and objector Plimpton have analyzed the data in their written submissions. Fed.R.Civ.P. 23(h)(3) makes a hearing discretionary. The Class Action Fairness Act of 2005 does not apply because of when this litigation began. Objector Plimpton chose not to appear at the original hearing, and the lawyers are from New York City. Thus, requiring a hearing would only add unnecessary expense with unlikely benefit to anyone.

I will allow the expenses itemized by the lawyers in the Declaration of Michael Jaffe at ¶ 25, totaling $119,185.15 for such items as overtime, telephone, fax, postage, FedEx, photocopying, court fees, service of process, etc. (I do *not* allow the so-called expense of having a law partner "administer" the voucher redemption process (for example, answering telephone inquiries) at his billing rate of $600 per hour. Those services could have been performed by clerical personnel.) That will leave $717,071.42 in the cash escrow fund.

I will allow attorney fees of $451,500, amounting to approximately thirty percent of the realized value of the vouchers. I

---

**2.** The defendants assumed the cost of providing notice of the initial settlement through individual mail notice, maintaining websites to provide information and providing mailed vouchers. The parties estimated these costs at $475,000, but I do not believe I have seen documentation of them. In any event, they do not include the expense of publication notice.

**3.** On February 7, 2005, the plaintiffs' counsel filed a one-page motion for attorney fees and litigation expenses, with an attached proposed order. On the same date, the plaintiffs' counsel filed a declaration in support of the request for attorney fees. The motion itself appears to be a form from another district, and gives notice that "Plaintiffs will move this Court, at the United States Courthouse, 156 Federal Street, Portland, Maine, at a date and time to be established by the Court, for an order pursuant to Rule 23(h) of the Federal Rules of Civil Procedure approving attorneys' fees and litigation expenses in connection with the settlement of this action." Because this language could conceivably be interpreted as a request for a hearing, the case manager telephoned Michael Jaffe, counsel for the plaintiffs, to inquire whether he was requesting a hearing. Mr. Jaffe responded that he requested a hearing only if the judge required further clarification. I therefore conclude that Mr. Jaffe has not requested a hearing and that no one else has requested a hearing.

conclude that thirty percent is a reasonable percentage.[4] Of course, that is only about thirty percent of the total attorney fees ($1,646,845 minus $119,185.18) the lawyers have accrued. Therefore, this case is undoubtedly a losing proposition for them.[5] I will not reiterate here the skepticism I expressed previously about the merits of the music club portion of this case. I conclude that the plaintiffs' lawyers did create identifiable value for the class, but that it was very modest for the work involved. Only two percent of the class was interested· in what they produced. The lawyers worked hard, but the case was not particularly complex; the difficulties were in the merits. Under all the circumstances, thirty percent is a fair recompense.

I direct that the remainder of the cash funds, *i.e.*, $265,571.42 and any additional interest net of taxes, ***not*** revert to the defendants. The defendants should not benefit from the fact that I have reduced the plaintiffs' lawyers' fee request. There is no way economically to distribute this amount to the class, given the huge size of the class, and the Settlement Agreement accordingly does not provide for distribution. Instead, under the Settlement Agreement ¶ 8.2, the Court may direct that any remaining money be distributed to music charities. Therefore, by April 28, 2005, the parties shall propose, separately or collectively, music charities that should be the beneficiaries of this money, including an explanation of why each charity should benefit, a description of the organization, and a certification that it is a tax-exempt nonprofit organization with no ties to the parties or the lawyers. The parties may, but are not required to, suggest appropriate amounts.

So Ordered.

---

4. In my earlier Order awarding attorney fees in the MAP segment of the music CD litigation I discussed the various percentage ranges that have been awarded, which typically are higher for smaller settlements. Stated another way, the attorney fees are $1.28 per redeemed CD.

5. I recognize that an argument could be made to add the $1,025,000 escrow to the $1,505,000 redeemed voucher value as the total value of the settlement before applying the percentage. I decline to do that here, where the settlement was structured from the outset to set aside a cash amount for lawyers and expenses that could never be available to class members. (If those mathematics are used, the award I approve here is just under eighteen percent of the total settlement amount. Alternatively, if I add in all the expenditures (except those of the defendants, which are undocumented), expenses and fees consume approximately thirty percent ($772,000) of the total settlement amount ($2,530,000).)